**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**PHALISITY WILLIAMS**                                                              **PLAINTIFF**

v.                                              No. 3:25-cv-00172-MPM-JMV

**TRANSUNION LLC and KIKOFF
LENDING, LLC**                                                      **DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

This cause comes before the Court on Defendant Kikoff Lending, LLC's ("Kikoff Lending") Motion to Compel Arbitration and Stay Claims [15] pursuant to the Federal Arbitration Act ("FAA"). Plaintiff Phalisity Williams has responded in opposition [20] and Kikoff Lending filed a reply [21]. The Court has reviewed the record and applicable law and is prepared to rule.

**I.    FACTUAL BACKGROUND**

This case arises out of a $120 loan Ms. Williams obtained from Kikoff Lending on July 7, 2023, to be repaid in installments (the "Loan"). Ms. Williams executed a Loan Agreement and Promissory Note (the "Agreement"), which included a broad arbitration clause governed by the FAA. She alleges that Kikoff Lending violated the Fair Credit Reporting Act ("FCRA") by reporting inaccurate information about the Loan to consumer reporting agencies, including Defendant Transunion, LLC ("Transunion"). Ms. Williams further contends that the alleged inaccuracy in her credit report caused her to be denied subsequent loans and prevented her from opening bank accounts and lines of credit with other lenders.

Ms. Williams filed suit against Transunion and Kikoff Lending, alledging FCRA violations under 15 U.S.C. § 1681 and asserting a state-law defamation claim. She argues that Kikoff Lending waived its right to arbitration by engaging in communications with her, including settlement discussions, before its first appearance in this litigation. Kikoff Lending denies waiver and moves

to compel arbitration as to all of Ms. Williams' claims against Kikoff Lending pursuant to the arbitration clause in the Agreement.

## II. DISCUSSION

The FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F. App'x 462, 463 (5th Cir. 2004) (quoting *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)). To determine if arbitration should be enforced, the first question to be addressed is whether the parties agreed to arbitrate the dispute in question. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003). To make this determination, the court considers "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that agreement." *Id.* (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). Ordinary contract principles apply to this analysis. *Id.* at 538. A court cannot compel a party to arbitrate when it never agreed to. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19-20 (1983).

### A. Arbitrability

Under the first prong of the inquiry, the record establishes that Ms. Williams entered into a loan agreement and promissory note with Kikoff Lending on July 7, 2023, which contained an arbitration clause. The clause provides, in relevant part:

> You and we agree that any and all past, present or future disputes, claims or controversies that have arisen or may arise between you and us, whether arising out of or relating to this Agreement (including any alleged breach thereof), your Account, any application for an Account, any disclosures made by us to you, the credit offered or provided to you, any default, any termination of credit privileges, any credit report, any Statements sent by us to you, any billing dispute, any payments made by you to us, any advertising or promotions, or any other aspect of the relationship or transactions between you and us (collectively, "Claims"), shall be resolved by an arbitrator through final and binding arbitration, rather than by a judge or jury in court, in accordance with the terms of this Arbitration Agreement.

> The term "Claim" has the broadest reasonable meaning and includes, without limitation: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) disputes based upon contract, negligence, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity; (3) data breach or privacy claims; and (4) claims arising out of or relating to our written or oral communications with or about you. Claims are subject to arbitration even if they arise out of or relate to actions, omissions, transactions, facts, or conduct that occurred before this Arbitration Agreement took effect.

[15] Ex. 1 at 8. The arbitration clause further specifies that: "[t]he Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), governs the interpretation and enforcement of this Arbitration Agreement." *Id.*

Ms. Williams "expressly contends the existence of any valid agreement" and alleges that Kikoff Lending failed to submit a copy of the arbitration agreement bearing her signature. [20] at 12. The record refutes this assertion. Kikoff Lending attached to its motion an authenticated copy of the Agreement containing the arbitration clause and reflecting Ms. Williams' electronic signature. [15] Ex. 1 at 8, 12. This Court has held that a party's signature, electronic or otherwise, on an arbitration agreement, combined with clear language waiving of trial rights, constitutes valid assent to arbitration. *Republic Fin. v. Cauthen*, 343 F. Supp. 2d 529, 533 (N.D. Miss. 2004); *see also Broad v. Nat'l Oilwell Varco, LP*, 744 F. Supp. 3d 651, 658 (W.D. La. 2024) (holding that a former employee's electronic signature constituted valid assent to the employer's arbitration policy.). Ms. Williams has not provided evidence disputing the authenticity of that document or denying that she executed the agreement.

In fact, the claims in Ms. Williams' amended complaint concern alleged discrepancies in the reported repayments of the loan she obtained from Kikoff Lending, further confirming the existence of and her consent to the Agreement. Under Fifth Circuit precedent, to place the making of an arbitration agreement "in issue," a party must "unequivocally deny" agreeing to arbitrate and produce "some evidence" supporting that position. *Chester v. DirecTV, LLC*, 607 F. App'x 362,

3

363-64 (5th Cir. 2015) (per curiam). Accordingly, the Court finds that the record establishes the existence of the Agreement and that the parties entered into a valid agreement to arbitrate.

The second inquiry is whether the dispute falls within the scope of the arbitration agreement. Kikoff Lending argues the arbitration clause is broad, expressly covering claims "arising out of or relating to … any credit report," and those arising under statute. [15] Ex. 1 at 8; [16] at 5. Ms. Williams' claims stem from the reporting of information about her Kikoff Loan to credit agencies, which she alleges violated the FCRA. Therefore, since Ms. Williams' claims relate directly to her credit report and the underlying loan, the Court concludes that they fall squarely within the scope of the arbitration clause.

### B. Waiver of Arbitration

Ms. Williams contends that Kikoff Lending waived its right to arbitration by substantially invoking the judicial process. Although federal policy favors arbitration, waiver may occur "when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986) (brackets, internal quotation marks omitted). A party "substantially invokes the judicial process" when it engages in "some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Precision Builders, Inc. v. Olympic Grp., L.L.C.*, 642 F. App'x 395, 399 (5th Cir. 2016) (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)). Where a party timely asserts the right to demand arbitration, the burden of proving waiver rests heavily on the party opposing arbitration. *Price*, 791 F.2d at 1161. Since waiver is disfavored, any doubts should be resolved in favor of arbitration. *See Subway Equip. Leasing Corp.*, 169 F.3d at 326; *Moses H. Cone*, 460 U.S. at 25.

4

Ms. Williams asserts that Kikoff Lending communicated with her for several weeks before appearing in this action, discussed settlement, requested extensions, and participated in drafting a proposed case management order referencing arbitration, which it submitted "on the eve of the case management conference[.]" [20] Ex. 10 at 4. She contends that Kikoff Lending's "eleventh-hour" motion to compel arbitration caused her prejudice. [20] at 4.

Kikoff Lending responds that its first appearance in this case was to file the motion to compel arbitration and that its pre-appearance communications were limited to settlement and scheduling matters. [21] at 2. Kikoff maintains that engaging in settlement negotiations and participating in the case management process is activity toward litigation rather than actual litigation. These, the Court agrees, are not overt acts that evidence an intent to litigate. The Fifth Circuit has recognized that "[a]ttempts at settlement … are not inconsistent with an inclination to arbitrate and do not preclude the exercise of a right to arbitration." *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991); *Sw. Indus. Imp. & Exp., Inc. v. Wilmod Co., Inc.*, 524 F.2d 468, 470 (5th Cir. 1975) ("Participation in settlement negotiations ... [has] been held not to preclude the right to arbitrate ....").

Applying these principles, Kikoff Lending's conduct does not demonstrate a desire to litigate rather than arbitrate. In its pre-appearance communications, Kikoff Lending expressly stated in the case management report and proposed order that it intended to move for arbitration. The motion to compel arbitration was filed fourteen days after Ms. Williams filed her Amended Complaint [14], and Kikoff Lending has not filed an answer or engaged in discovery. Under Fifth Circuit precedent, a party waives arbitration when it has invoked the judicial process to a much greater degree than present here. *See Price v. Drexel Burham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir. 1986) (affirming the district court's finding of waiver where the movant "initiated extensive

discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines, all without demanding arbitration.").

"What constitutes a waiver or abandonment of the arbitration agreement … depends upon the facts of each case[.]" *Burton-Dixie Corp. v. Timothy McCarthy Construction Co., Inc.*, 436 F.2d 405, 406 (5th Cir.1971). The record does not support a finding that Kikoff Lending invoked the judicial process before seeking a stay to allow arbitration. Its only filing is the present motion to compel arbitration and stay the claims, and no discovery has occurred. Accordingly, the Court finds no substantial invocation of the judicial process.

Finally, Ms. Williams argues that she suffered prejudice because Kikoff Lending waited until the "eleventh-hour" before the case management conference to assert its right to arbitrate. [20] at 4, Ex. 10 at 4. The Court rejects this argument. Kikoff Lending's participation in the case management process, explicitly noting its intent to arbitrate, put Ms. Williams' on notice of that intent before Kikoff Lending had even made a formal appearance on this case or filed an answer. Kikoff Lending filed its motion to arbitrate and stay claims exactly fourteen days after the amended complaint was filed, and Ms. Williams has not shown prejudice where discovery has not yet commenced. Therefore, because Kikoff Lending did not engage in an overt act amounting to substantial invocation of the judicial process and Ms. Williams has not shown prejudice, the Court concludes Kikoff Lending has not waived its right to arbitration.

### III. CONCLUSION

For the reasons stated above,

IT IS, THEREFORE, ORDERED that Defendant Kikoff Lending's Motion to Compel Arbitration and Stay Claims [15] is GRANTED. This case is hereby stayed pending the outcome of arbitration.

The parties are required to submit written reports to the Court on a quarterly basis, beginning on December 1, 2025.

SO ORDERED this the 3rd day of November, 2025.

                                              /s/Michael P. Mills
                                              UNITED STATES DISTRICT JUDGE
                                              NORTHERN DISTRICT OF MISSISSIPPI